**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

CYNTHIA BRACCICA, JENNIFER BROWNE, ANDREADEPALMA, DENNISE JOHNSON, and MARISOL VENTRICE,

Plaintiffs,

- against -

NORTHWELL HEALTH SYSTEMS,

Defendants.

Docket No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

---

Plaintiffs Cynthia Braccica, Jennifer Browne, Andrea DePalma, Dennise Johnson, and Marisol Ventrice (collectively, "Plaintiffs"), file this action for damages against Northwell Health Systems ("Northwell") for discriminating on the basis of religion and genetic information in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Genetic Information Nondiscrimination Act 42 U.S.C. § 2000ff *et seq*. In support thereof, Plaintiffs allege as follows:

**PRELIMINARY STATEMENT**

"Violate your sincerely held religious beliefs or you lose your job." There is perhaps no greater textbook example of the conduct expressly prohibited by Title VII. But after years of fear, exhaustion, and ever-shifting landscape had sent American workers into a tailspin, corporations began exploiting their workers' vulnerabilities and capitalized on the opportunity to engage in conduct that has been prohibited by law for 232 years. It is time this ends, and it is time the rights of American workers–especially healthcare workers–are restored.

For 35 consecutive weeks – the deadliest weeks of the COVID-19 pandemic – Northwell Health permitted its employees to forego vaccination despite its availability since December 2020.

1

In what originally appeared to be a well-struck balance between effective mitigation of COVID-19 and the preservation of fundamental religious liberties, New York took an about-face. On August 23, 2021, one day before Governor Hochul took office, the State's Public Health and Health Planning Council—an advisory committee headed by Commissioner Zucker—proposed a revised mandate, this time with no religious exemption despite then-Governor Cuomo's promise religious freedoms would be preserved. Just 72 hours later, the council issued the regulation eviscerating religious protections. 10 N. Y. Admin. Code §2.61 (2021) ("Section 2.61").

There was no evidence to support the religious-based distinction. The regulatory impact statement accompanying this decision did not discuss the feasibility of a religious exemption or the reasons for removing it. It was not until August 15, 2021, any information concerning the basis upon which the abrupt removal of religious protections was made became available. In succinct response to a report, Governor Hochul simply informed the public that "we left off [the religious exemption] in our regulations intentionally." Governor Hochul further alleged the decision justified because no "organized religion" sought it and individuals who did were not "listening to God and what God wants." Now, thousands of New York healthcare workers, including the five plaintiffs of this action, have not only lost their jobs, but also have been deemed ineligible for the State's unemployment benefits.

Unfortunately, the State's decision to desecrate the religious freedoms of New Yorkers also plagued the private sector. Corporations such as Northwell likewise abruptly changed course and removed any ability for employees to maintain their employment while contemporaneously practicing their faith. Following New York's lead, Northwell also prohibited its employees from obtaining religious exemptions to its mandatory COVID-19 vaccination policy. But Northwell did not stop at merely religious exemptions; instead, Northwell further refused to even provide its

employees religious *accommodations* – a textbook example of the precise conduct that Title VII was enacted to prohibit.

At its core, Plaintiffs lodged this action because Northwell discriminated against Plaintiffs and terminated their employment because (1) Plaintiffs sincerely held religious beliefs prohibited compliance with Northwell's mandatory vaccination policy; (2) Northwell refused to reasonably accommodate Plaintiffs sincerely held religious beliefs; and (3) because of Plaintiffs genetic information and their refusal to modify it – the resulting impact of being inoculated with an mRNA or viral vector COVID-19 vaccine. Perhaps most disappointing of all, Northwell not only violated Title VII and GINA, but it did so without achieving anything. Indeed, it is well-established that "[b]eing vaccinated does not prevent an individual from contracting or transmitting Covid-19." *Garvey, et al. v. the City of New York, et al.*, N.Y. App. Div. Index No. 85163/2022 (Oct. 24, 2022).

In hopes of restoring the religious freedoms of New Yorkers, it is more important than ever to remember that "**even in a pandemic, the Constitution cannot be put away and forgotten**." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2021).

## JURISDICTION AND VENUE

1. This action arises under 42 U.S.C. § 2000e-2 and therefore, jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1343.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District and Northwell maintains its principal place of business in this district.

3. This Court is authorized to grant Plaintiffs' prayer for relief regarding costs, including a reasonable attorney's fee, pursuant to 42 U.S.C. § 1988.

## PARTIES

**A.  PLAINTIFFS**

4.      Plaintiff **Cynthia Braccica** ("Ms. Braccica") is an adult resident of Monmouth County, New Jersey and a former employee of Northwell Health Systems. At all times relevant, Ms. Braccica was employed as a Registered Nurse at Staten Island University Hospital, a member hospital of Northwell Health Systems, until she was discriminated against and ultimately retaliatorily discharged. Specifically, Ms. Braccia advised Northwell and  that her sincerely held religious beliefs prohibited compliance with Northwell's mandatory COVID-19 vaccination policy and as a result, Ms. Braccica requested that Northwell provide her with a reasonable accommodation. Despite its lawful obligation to reasonably accommodate Ms. Braccica's sincerely held religious beliefs and absent the imposition of any undue hardship in doing so, Northwell discriminated against her and denied her accommodation request. Northwell then retaliated against Ms. Braccica and terminated her employment on or about September 29, 2021. At all times relevant, Ms. Braccica satisfied or exceeded her employer's reasonable expectations as to job performance with or without a reasonable accommodation. Ms. Braccia demonstrated her ability to perform the essential functions and duties of her job as evidenced by factors including without limitation, her education, experience, work history, and performance reviews. Perhaps most compelling is the fact that Northwell permitted Ms. Braccica to work in the exact same capacity and with the exact same reasonable accommodation Ms. Braccica requested. Despite her months' long record of satisfactory performance without incident, Northwell arbitrarily refused to accommodate Ms. Braccica and otherwise discriminated against her and subsequently retaliated by terminating her employment.

5.      Plaintiff **Jennifer Browne** ("Ms. Browne") is an adult resident of Suffolk County, New York and a former employee of Northwell Health Systems. At all times relevant, Ms. Browne was employed as a Registered Nurse at Long Island Jewish Medical Center, a member hospital of Northwell Health Systems, until she was discriminated against and ultimately retaliatorily discharged. Specifically, Ms. Browne advised Northwell and  that her sincerely held religious beliefs prohibited compliance with Northwell's mandatory COVID-19 vaccination policy and as a result, Ms. Browne requested that Northwell provide her with a reasonable accommodation. Despite its lawful obligation to reasonably accommodate Ms. Browne's sincerely held religious beliefs and absent the imposition of any undue hardship in doing so, Northwell discriminated against her and denied her accommodation request. Northwell then retaliated against Ms. Browne and terminated her employment on or about September 30, 2021. At all times relevant, Ms. Browne satisfied or exceeded her employer's reasonable expectations as to job performance with or without a reasonable accommodation. Ms. Browne demonstrated her ability to perform the essential functions and duties of her job as evidenced by factors including without limitation, her education, experience, work history, and performance reviews. Perhaps most compelling is the fact that Northwell permitted Ms. Browne to work in the exact same capacity and with the exact same reasonable accommodation Ms. Browne requested. Despite this months' long history of satisfactory performance without incident, Northwell arbitrarily refused to accommodate Ms. Browne and otherwise discriminated against her prior to retaliatorily terminating her employment.

6.      Plaintiff **Andrea DePalma** ("Ms. DePalma") is an adult resident of Suffolk County, New York and a former employee of Northwell Health Systems. At all times relevant, Ms. DePalma was employed as a Physical Therapist at Glen Cove Hospital, a member hospital of Northwell Health Systems, until she was discriminated against and ultimately retaliatorily

discharged. until she was discriminated against and thereafter, retaliatory discharged. Specifically, Ms. DePalma advised Northwell and  that her sincerely held religious beliefs prohibited compliance with Northwell's mandatory COVID-19 vaccination policy and as a result, Ms. DePalma requested that Northwell provide her with a reasonable accommodation. Despite its lawful obligation to reasonably accommodate Ms. DePalma's sincerely held religious beliefs and absent the imposition of any undue hardship in doing so, Northwell discriminated against her and denied her accommodation request. Northwell then retaliated against Ms. DePalma and terminated her employment on or about September 28, 2021. At all times relevant, Ms. DePalma satisfied or exceeded her employer's reasonable expectations as to job performance with or without a reasonable accommodation. Ms. DePalma demonstrated her ability to perform the essential functions and duties of her job as evidenced by factors including without limitation, her education, experience, work history, and performance reviews. Perhaps most compelling is the fact that Northwell permitted Ms. DePalma to work in the exact same capacity and with the exact same reasonable accommodation Ms. DePalma requested. Despite this months' long history of satisfactory performance without incident, Northwell arbitrarily refused to accommodate Ms. DePalma and otherwise discriminated against her prior to retaliatorily terminating her employment.

7.     Plaintiff **Dennise Johnson** ("Ms. Johnson") is an adult resident of Fairfield County, Connecticut and a former employee of Northwell Health Systems. At all times relevant, Ms. Johnson was employed as a Registered Nurse at Westchester Health Associates, a member hospital of Northwell Health Systems, until she was discriminated against and thereafter, retaliatory discharged. Specifically, Ms. Johnson advised Northwell and  that her sincerely held religious beliefs prohibited compliance with Northwell's mandatory COVID-19 vaccination policy and as

6

a result, Ms. Johnson requested that Northwell provide her with a reasonable accommodation. Despite its lawful obligation to reasonably accommodate Ms. Johnson's sincerely held religious beliefs and absent the imposition of any undue hardship in doing so, Northwell discriminated against her and denied her accommodation request. Northwell then retaliated against Ms. Johnson and terminated her employment on or about October 1, 2021. At all times relevant, Ms. Johnson satisfied or exceeded her employer's reasonable expectations as to job performance with or without a reasonable accommodation. Ms. Johnson demonstrated her ability to perform the essential functions and duties of her job as evidenced by factors including without limitation, her education, experience, work history, and performance reviews. Perhaps most compelling is the fact that Northwell permitted Ms. Johnson to work in the exact same capacity and with the exact same reasonable accommodation Ms. Johnson requested. Despite this months' long history of satisfactory performance without incident, Northwell arbitrarily refused to accommodate Ms. Johnson and otherwise discriminated against her prior to retaliatorily terminating her employment.

8.     Plaintiff **Ventrice Marisol** ("Ms. Marisol") is an adult resident of Richmond County, New York and a former employee of Northwell Health Systems. At all times relevant, Ms. Marisol was employed as a Medical Assistant at Staten Island University Hospital, a member hospital of Northwell Health Systems, until she was discriminated against and thereafter, retaliatory discharged. Specifically, Ms. Marisol advised Northwell and  that her sincerely held religious beliefs prohibited compliance with Northwell's mandatory COVID-19 vaccination policy and as a result, Ms. Marisol requested that Northwell provide her with a reasonable accommodation. Despite its lawful obligation to reasonably accommodate Ms. Marisol's sincerely held religious beliefs and absent the imposition of any undue hardship in doing so, Northwell discriminated against her and denied her accommodation request. Northwell then retaliated against

Ms. Marisol and terminated her employment on or about September 30, 2021. At all times relevant, Ms. Marisol satisfied or exceeded her employer's reasonable expectations as to job performance with or without a reasonable accommodation. Ms. Marisol demonstrated her ability to perform the essential functions and duties of her job as evidenced by factors including without limitation, her education, experience, work history, and performance reviews. Perhaps most compelling is the fact that Northwell permitted Ms. Marisol to work in the exact same capacity and with the exact same reasonable accommodation Ms. Marisol requested. Despite this months' long history of satisfactory performance without incident, Northwell arbitrarily refused to accommodate Ms. Marisol and otherwise discriminated against her prior to retaliatorily terminating her employment.

**B. DEFENDANT**

9.      Defendant **Northwell Health Systems** is a New York corporation and Plaintiffs' former employer. At all times relevant, Northwell employed more than fifteen (15) employees and is therefore subject to Title VII, which requires employers (such as Northwell) to reasonably accommodate its employees' (such as Plaintiffs) sincerely held religious beliefs.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10.      Ms. Braccica timely filed a charge of discrimination with the EEOC concerning claims arising under Title VII. On August 25, 2022, the EEOC issued Ms. Braccica her right-to-sue letter, providing that Ms. Browne had 90 days to commence a civil action in federal court. Because Ms. Braccica filed this action within 90 days of receiving her right-to-sue letter, all conditions precedent to maintaining this action have been satisfied. *See* Exhibit 1.

11.      Ms. Browne timely filed a charge of discrimination with the EEOC concerning claims arising under Title VII. On August 9, 2022, the EEOC issued Ms. Browne her right-to-sue letter, providing that Ms. Browne had 90 days to commence a civil action in federal court. Because

Ms. Browne filed this action within 90 days of receiving her right-to-sue letter, all conditions precedent to maintaining this action have been satisfied. *See* Exhibit 2.

12.     Ms. DePalma timely filed a charge of discrimination with the EEOC concerning claims arising under Title VII. On August 18, 2022, the EEOC issued Ms. DePalma her right-to-sue letter, providing that Ms. DePalma had 90 days to commence a civil action in federal court. Because Ms. DePalma filed this action within 90 days of receiving her right-to-sue letter, all conditions precedent to maintaining this action have been satisfied. *See* Exhibit 3.

13.     Ms. Johnson timely filed a charge of discrimination with the EEOC concerning claims arising under Title VII. On August 26, 2022, the EEOC issued Ms. Johnson her right-to-sue letter, providing that Ms. Johnson had 90 days to commence a civil action in federal court. Because Ms. Johnson filed this action within 90 days of receiving her right-to-sue letter, all conditions precedent to maintaining this action have been satisfied. *See* Exhibit 4.

14.     Ms. Marisol timely filed a charge of discrimination with the EEOC concerning claims arising under Title VII. On August 4, 2022, the EEOC issued Ms. Marisol her right-to-sue letter, providing that Ms. Marisol had 90 days to commence a civil action in federal court. Because Ms. Marisol filed this action within 90 days of receiving her right-to-sue letter, all conditions precedent to maintaining this action have been satisfied. *See* Exhibit 5.

## **STATEMENT OF FACTS**

**A.  Background**

15.     On or about December 11, 2020, the first COVID-19 vaccine became available to the public. For the next eight months, Northwell never required its employees to be vaccinated against COVID-19. In fact, Northwell did not even require its employees to test for COVID-19 until August 2, 2021.

16.     Beginning on August 2, 2021, Northwell began requiring its employees to test for COVID-19 on a weekly basis. Upon receipt of negative test results evidencing an employee did not have COVID-19, he or she would be permitted to work for that week in accordance with the protocols in place during the previous eight months – the same protocols that were in effect during the deadliest months of the pandemic. Alternatively, employees could get vaccinated against COVID-19 in lieu of the weekly testing requirement.

17.     Approximately two (2) weeks later, on August 16, 2021, former Governor Andrew Cuomo announced that all New York state healthcare workers would be required to be vaccinated against COVID-19 if they wished to continue working at a healthcare facility in the state.

18.     On August 18, 2021, New York Commissioner of Health, Howard Zucker, M.D. issued an Order for Summary Action[1] ("Healthcare Workers Mandate") memorializing then-Governor Cuomo's August 16th announcement, inclusive of certain exceptions.

19.     Relevant here is the specific exception concerning religion. Specifically, the Healthcare Workers Mandate states in pertinent part:

> Covered entities shall grant a religious exemption for COVID-19 vaccination for covered personnel if they hold a genuine and sincere religious belief contrary to the practice of immunization, **subject to a reasonable accommodation** by the employer. Covered entities shall document such exemptions **AND** such **reasonable accommodations** in personnel records or other appropriate records in accordance with applicable privacy laws by September 27, 2021, and continuously, as needed, thereafter.[2]

20.     As emphasized above, the Healthcare Workers Mandate clearly delineates that exemptions and accommodations are distinctly different, and further  differentiation between exemptions and accommodations and further articulates employers *shall* reasonably

---

[1] Order for Summary Action, available at: https://www.littler.com/files/ny_doh_order_for_summary_action.pdf
[2] *Id.*

**accommodate** healthcare workers who hold sincere religious beliefs that prohibit them from receiving a COVID-19 vaccine.

21.     Hours later that same day, Northwell announced its employees would no longer have the option to submit negative test results each week and all employees were required to become fully vaccinated against COVID-19 in order to remain employed by Northwell.

22.     Northwell did not inform its employees that the Healthcare Mandate expressly required Northwell to provide for reasonable accommodations to any employee whose sincerely held religious beliefs prohibited compliance with mandatory COVID-19 vaccination policies.

23.     Instead, Northwell created a "Religious *Exemption* Request Form" and instructed its religious employees to submit their completed form by September 3, 2021.[3]

24.     Northwell never made available a means by which its employees were permitted to seek – let alone obtain – a religious *accommodation* as required by not only the Healthcare Workers Order, but also 42 U.S.C. § 2000e *et seq.*

25.     While the specious September 3, 2021 "deadline" is arbitrary and bears no weight as to whether any Northwell employee is entitled to a reasonable accommodation, Northwell evidenced its discriminatory animus against religious persons by refusing to accept "timely-submitted" "Religious Exemption Request Form" as early as September 1, 2021.

26.     According to Northwell, it refused to accept Religious Exemption Request Forms because "the New York State Department of Health has indicated, consistent with the Vaccinate Mandate, that we are unable to recognize any religious exemptions to the mandate for healthcare employees."

---

[3] Northwell did concede exemption request forms submitted after September 3, 2021 would be reviewed, "but in order to comply with the State's regulatory requirement, team members submitting forms after September 3 may be placed on unpaid administrative leave as of September 27th if they are unvaccinated and their request is still being reviewed on that date."

27.     As of September 3, 2021, Northwell only made information available as to religious *exemptions* – at no time did Northwell make available a means by which its employees could seek religious *accommodations* despite the requirement under state and federal law to do so.

**B.  Northwell's Intentional Scheme to Mislead Employees with Semantics**

28.     Northwell's intent to discriminate against religious persons and refuse to accommodate them is abundantly clear. In addition to refusing to provide any resources or information concerning religious accommodations, Northwell's CEO, Michael J. Dowling, has even conceded that Northwell did "everything possible to make it difficult not to be vaccinated."

29.     To carry out its scheme to discriminate against religious persons, Northwell first took painstaking steps to ensure it only mentioned religious exemptions. Effectively, Northwell sanitized any use of the term "religious accommodation" as Northwell was fully aware that state and federal law require the  provision of reasonable religious *accommodations* – not religious *exemptions*.

30.     In the event an employee made reference to, asked a question, or attempted to submit a religious accommodation, Northwell would surreptitiously respond with information concerning religious exemptions and ignore any reference made to religious accommodations.

31.     The purpose of Northwell's "slight-of hand" non-answer was to deceive its employees into believing the terms "accommodation" and "exemption" were analogous despite knowing a religious "exemption" and a religious "accommodation" are *not* analogous but rather, legally distinct terms.

32.     Despite this, Plaintiffs nevertheless submitted religious accommodation requests on the basis that they are Christians, and their faith compels that they observe pro-life principles. Specifically, Plaintiffs believe and informed Northwell that they sincerely believe abortion is a sin

and as a result, Plaintiffs could not in good faith or conscience receive a medical product that they knew had been tested, produced, developed, or derived through the use of aborted fetal cell line tissues procured from aborted fetuses.

33.     At all times relevant, the only available COVID-19 vaccines were tested, produced, developed, or derived through the use of aborted fetal cell line tissues procured from aborted fetuses.

34.     In response, Northwell did not contest the validity of Plaintiffs' asserted religious beliefs or that their beliefs were sincerely held; rather, Northwell refused to provide Plaintiffs with a reasonable religious accommodation on basis that doing so would impose upon Northwell an undue hardship.

35.     Of course, the provision of a reasonable accommodation such as continued weekly testing or masking would *not* impose an undue hardship; indeed, Northwell had operated while providing these exact accommodating conditions for more than 35 consecutive weeks while vaccines were available.

36.     Instead, Northwell relied upon Title 10 N.Y. Comp. Codes R. & Regs. § 2.61 ("Section 2.61") – the brand new and ever so convenient statute that made it unlawful for Northwell to exempt its employees from being vaccinated against COVID-19 on the basis of their religion.

37.     But as we know, pursuant to the binding authority of the Second Circuit, "**Section 2.61, on its face, does not bar an employer from providing an employee a reasonable accommodation**." *We The Patriots USA, Inc. v. Hochul*, No. 21-2179 (2d Cir. 2021).

38.     Boiled down to its essence, Northwell never made available a procedure by which its employees could seek religious accommodations. Instead, Northwell exclusively made

available a procedure by which its employees could request religious *exemptions*. Once Northwell received an employee's exemption request, Northwell would issue a boilerplate denial. Northwell knew its boilerplate denials would be upheld as a matter of law because Northwell could cite to Section 2.61 in asserting granting an exemption would constitute a violation of New York state law. And so long as granting an exemption on the basis of religion remained unlawful, Northwell could show granting a religious exemption imposed an "undue hardship."

39.     Despite enduring this reprehensible scheme, Plaintiffs were not fooled. Each Plaintiff individually submitted their own religious accommodation requests to Northwell.

40.     Unfortunately, the submissions were to no avail. Northwell simply ignored Plaintiffs religious accommodation requests, reiterated unsolicited and irrelevant information (i.e., telling Plaintiffs they were not entitled to religious exemptions), and terminated their employment without due process of law.

## C.  PLAINTIFFS' RELIGIOUS ACCOMMODATION REQUESTS

41.     At all times relevant, Ms. Braccica complied with all COVID-19 mitigation protocols Northwell implemented, including *inter alia* wearing masks, socially distancing, and testing for COVID-19 on a weekly basis (collectively, "mitigation protocols").

42.     The mitigation protocols, both individually and collectively, have evidenced-based track records demonstrating their effectiveness and the feasibility with which Northwell is able to implement and provide any or all of the mitigation protocols.

43.      Based upon Northwell's provision of the aforesaid mitigation protocols and the continuation of such provision of the same for more than eight months, it is not subject to reasonable dispute that the aforesaid mitigation protocols do not impose upon Northwell an undue hardship.

44.     Plaintiffs have always been amenable, and Plaintiffs remain amenable, to abiding by the aforesaid mitigation protocols, and Northwell was aware of their amenability to the same at all times relevant.

45.     Upon learning that Plaintiffs were required to be vaccinated against COVID-19 and could no longer elect to abide by the aforesaid mitigation protocols in lieu of vaccination, and despite Northwell's malicious attempt to deceive Plaintiffs into foregoing the submission of religious accommodations, Plaintiffs each submitted to Northwell their own individual requests for religious accommodations.

46.     Plaintiffs submitted their own individual requests for religious accommodations despite Northwell's failure and refusal to provide any resources or mechanisms for Plaintiffs to submit religious *accommodation* requests. The only resources or information Northwell provided pertained to religious *exemptions*, as explained more fully above.

47.     At all times relevant, Northwell ignored Plaintiffs religious accommodation requests. To the extent that any correspondence Northwell issued to Plaintiffs was elicited based upon their religious accommodation request submissions, Northwell's correspondence does not vitiate its ignorance insofar as any correspondence Northwell submitted to Plaintiff was entirely devoid as to the procedure to obtain religious accommodations and otherwise did not include any language responsive to Plaintiffs accommodation requests.

48.     The reiteration that Plaintiffs are not entitled to religious exemptions is irrelevant in that Plaintiffs were never seeking to be exempted from Northwell's mandatory vaccination policy; rather, Plaintiffs merely sought to be subjected to the policy with a reasonable accommodation.

49.     At all times relevant, Plaintiffs never requested that they be deemed exempted from or otherwise permitted to continue working "free and clear" of Northwell's mandatory vaccination policy.

50.     Plaintiffs hold sincere religious beliefs, as explained more fully above.

51.     There is no dispute that Northwell and Plaintiffs are in agreement that the religious beliefs each respective Plaintiff asserted are in fact, religious. Northwell has never challenged the religious nature of any of the beliefs each respective Plaintiff asserted.

52.     Plaintiffs' religious beliefs are sincerely held.

53.     There is no dispute that Northwell and Plaintiffs are in agreement that each respective Plaintiffs' religious beliefs are in fact, sincerely held. Northwell has never challenged the sincerity with which each respective Plaintiff holds their beliefs.

54.     Ignoring and otherwise failing to respond to each respective Plaintiffs' request for a religious accommodation, treating Plaintiffs differently or taking adverse employment action against them upon learning that Plaintiffs are religious persons constitutes religious-based discrimination in violation of Title VII. *See* 42 U.S.C. § 2000e, *et seq.*

55.     Refusing to provide each respective Plaintiff with a reasonable religious accommodation that does not impose an undue hardship despite their lawful entitlement to the same is unlawful and violates Title VII. *See* 42 U.S.C. § 2000e, *et seq.*

56.     As religious persons, Plaintiffs are members of a constitutionally protected class, and the protected class on the basis of religion is entitled to equal protection of law as other protected classes of persons, including those who are disabled.

57.     Ignoring and otherwise failing to review or consider each respective Plaintiffs' request for a religious accommodation, as well as the refusal to reasonably accommodate Plaintiffs

16

sincerely held religious beliefs while not ignoring and actually reviewing other Northwell employees' requests for medical accommodations constitutes disparate treatment in violation of violates Title VII. *See* 42 U.S.C. § 2000e, *et seq.*

58.    Refusing to provide Plaintiffs with an accommodation on the basis of their religion while providing reasonable accommodations to other persons similarly situated to Plaintiffs on the basis of their disabilities constitutes disparate treatment in violation of Title VII. *See* 42 U.S.C. § 2000e, *et seq.*

59.    Each respective Plaintiffs' beliefs are religious.

60.    Each respective Plaintiff sincerely holds their beliefs.

61.    Northwell can reasonably accommodate Plaintiffs religious beliefs through *inter alia* masking and weekly testing.

62.    Accommodating Plaintiffs through *inter alia* masking and weekly testing does not impose an undue hardship upon Northwell.

63.    Upon learning each respective Plaintiff was a religious person as intended by United States and New York law, Northwell terminated each Plaintiff's employment.

64.    After refusing to accommodate each respective Plaintiffs' sincerely held religious beliefs, Northwell terminated each Plaintiffs' employment.

## COUNT I
### RELIGIOUS DISCRIMINATION
### Violation of Title VII, 42 U.S.C. §§ 2000e *et seq.*

65.    Plaintiffs  re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

66.    Each respective Plaintiff sincerely holds religious beliefs and are members of a protected class.

67.     Each respective Plaintiff is an employee within the meaning of Title VII.

68.     Northwell is an employer within the meaning of Title VII.

69.     Northwell had actual knowledge of each respective Plaintiff's sincerely held religious beliefs based on the correspondences exchanged concerning their "Not Vaccinated" status and their communications concerning reasonable accommodations for their sincerely held religious beliefs.

70.     Each respective Plaintiff experienced adverse employment action and a materially adverse change in the terms and conditions of their employment – namely, the termination of their employment – because of each respective Plaintiff sincerely holds religious beliefs.

71.     At all times relevant, each respective Plaintiff was qualified, is qualified, and remains able to perform the essential functions of their jobs unvaccinated.

72.     At all times relevant, each respective Plaintiff was qualified, is qualified, and remains able to perform the essential functions of their jobs with a reasonable accommodation.

73.     Because of each respective Plaintiff's sincerely held religious beliefs, Northwell took adverse employment action against them by *inter alia* refusing to accommodate them and terminating their employment.

74.     Providing a reasonable religious accommodation to each respective Plaintiff would not cause Northwell to suffer an undue hardship as evidenced by Northwell's previous provision of mitigation protocols in lieu of vaccination and the efficacy of such mitigation protocols to achieve the ends sought to be achieved by Northwell's mandatory vaccination policy.

75.     All allegations set forth herein constitute a discrimination on the basis of religion.

76.     All allegations set forth herein constitute a failure to accommodate on the basis of religion.

77.     All allegations set forth herein constitute a violation of Title VII.

78.     As a direct and proximate result of the aforesaid complained of conduct and violation of Title VII, each respective Plaintiff sustained pecuniary and non-economic injuries in an amount that exceeds $75,000.00, including lost wages, benefits, retirement funds, the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, attorneys' fees, and costs associated with this action.

## COUNT II
### GENETIC INFORMATION DISCRIMINATION
**Violation of GINA, 42 U.S.C. § 2000ff-1(b)**

79.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

80.     Northwell is an employer as intended by GINA insofar as at all times relevant, Northwell employed 15 or more employees.

81.     GINA "an Act to prohibit discrimination on the basis of genetic information with respect to […] employment." 42 U.S.C. § 2000ff-1(b). GINA also makes it unlawful "for an employer to request [or] require . . . genetic information with respect to an employee . . .".

82.     Northwell requested and required genetic information by ordering each respective Plaintiff to inform Northwell whether they had received any of the available COVID-19 vaccines.

83.     Plaintiffs informed Northwell that they were unvaccinated.

84.     By learning Plaintiffs were unvaccinated, Northwell obtained genetic information about Plaintiffs insofar as Northwell learned Plaintiffs genes did not produce a "spike protein" that their immune systems recognized, which in turn, triggers the production of antibodies to combat the COVID-19 virus.

85.     mRNA is merely an RNA version of a gene.

86.    mRNA is genetic material.

87.    mRNA is a gene.

88.    Similarly, viral vector vaccines deliver "genetic material" into the body.

89.    Upon learning this about Plaintiffs genetic information, Northwell terminated their employment and otherwise used Plaintiffs genetic information to make employment related decisions in violation of 42 U.S.C. § 2000ff-1(b).

90.    There are no exceptions to the prohibition on using genetic information to make employment decisions.

91.    Northwell's violation of 42 U.S.C. § 2000ff-1(b) likely chilled other reasonable persons from submitting maintain their employment.

92.    Northwell's violation of 42 U.S.C. § 2000ff-1(b) resulted in other employees, who were not chilled, revealing genetic information with respect to themselves or family members to Northwell.

93.    As a direct and proximate result of the aforesaid complained of conduct and violation of GINA, each respective Plaintiff sustained pecuniary and non-economic injuries in an amount that exceeds $75,000.00, including lost wages, benefits, retirement funds, the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, attorneys' fees, and costs associated with this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully prays that this Honorable Court enter judgment in their favor, award such relief as to make Plaintiffs whole and remedy the aforesaid violations of New York and federal law, and hold Defendants liable and in doing so, award all legal and equitable relief provided by law, including but not limited to:

a. Injunctive relief providing a reasonable accommodation and an otherwise non-hostile work environment;

b. Compensatory damages for past and future economic injuries in an amount in excess of $75,000.00;

c. Punitive damages in an amount to be determined at trial;

d. An award of reasonable attorney's fees and litigation costs pursuant to 42 U.S.C. § 1988; and

e. Any such other relief this Honorable Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated: November 2, 2022

Respectfully submitted,

By:     /s/ CHAD J. LAVEGLIA

Chad J. LaVeglia
LAW OFFICE OF CHAD J. LAVEGLIA PLLC
350 Motor Parkway, Suite 308
Hauppauge, NY 11788
Tel: (631) 450-2468
Claveglia@cjllaw.org

/s/ MICHAEL A. YODER

Michael A. Yoder*
YODER DAVIS LAVEGLIA LLP
2300 Wilson Blvd., Suite 700
Arlington, VA 2201
Tel: (571) 234-5594
myoder@yoderdavislaveglia.com
*pro hac vice forthcoming

*Counsel for Plaintiffs*