UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
IRINA ABRAMOV, MAUREN ALCHERMES,
DAWN ALOIS, JOY ALTRUI, ANGELA
BASTONE-PERGOLA, EVGENIYA BATALLA,
DIANE BONO, CYNTHIA BRACCIA, JENNIFER
BROWNE, KATHERINE CARNEY, ANDREA
DE PALMA, KAREN FERRANDO, CARMELA
FIORICA, EILEEN HAGAN, SARAH HASENEY,
MARYANN HOJNOWSKI, DENNISE
JOHNSON, KATHERINE KOUGENTAKIS,
NILBERK KURT, KAREN LA ROSA, DEBRA
LANAHAN, NADIRA MAHABIR, VERONICA
NEWTON, KATLYN PASTOR, REBECCA
RAMIREZ, JULIA SHAW, ROSE TAYLOR, MIA
TORRES, MARISOL VENTRICE, and MICHELE
WOODWARD-LAWTON,

                        Plaintiffs,                                **MEMORANDUM AND ORDER**
                                                            22-CV-06687 (OEM) (LGD)

        -against-

NORTHWELL HEALTH SYSTEMS,

                        Defendant.
------------------------------------------------------------X
**ORELIA E. MERCHANT, United States District Judge:**

On November 2, 2022, plaintiffs Cynthia Braccica, Jennifer Browne, Andrea de Palma,

Dennise Johnson, and Marisol Ventrice commenced this action asserting claims under Title VII of

the Civil Rights Act of 1964, 42 U.S.C. §§ 2000ff *et seq.* ("Title VII"). Complaint, ECF 1.

Plaintiffs[1] filed an amended consolidated complaint in which they bring claims against their former

employer Defendant Northwell Health ("Northwell," "NHS," or "Defendant") for Religious

---

[1] There are 30 named plaintiffs in this action: Irina Abramov, Mauren Alchermes, Dawn Alois, Joy Altrui, Angela
Bastone-Pergola, Evgeniya Batalla, Diane Bono, Cynthia Braccia, Jennifer Browne, Katherine Carney, Andrea De
Palma, Karen Ferrando, Carmela Fiorica, Eileen Hagan, Sarah Haseney, Maryann Hojnowski, Dennise Johnson,
Katherine Kougentakis, Nilberk Kurt, Karen La Rosa, Debra Lanahan, Nadira Mahabir, Veronica Newton, Katlyn
Pastor, Rebecca Ramirez, Julia Shaw, Rose Taylor, Mia Torres, Marisol Ventrice, and Michele Woodward-Lawton
(collectively "Plaintiffs"). *See* ECF 16 (Court granted consolidation on April 7, 2023, with *Abramov et al v. Northwell
Health Systems* ("Abramov Action"), 22-CV-07538-GRB-LG).

Discrimination and Disparate Treatment under Title VII.  *See* Amended Consolidated Complaint ("Am. Compl."), ECF 19, at 22-23.  Plaintiffs challenge a workplace Covid-19 vaccination policy implemented by Northwell.  In addition, an individual plaintiff, Rose Taylor ("Taylor") brings a separate claim against Defendant asserting discrimination pursuant to 42 U.S.C. § 12101 *et seq.*, for an alleged violation of the Americans with Disabilities Act ("ADA").

Now before the Court is Northwell's Motion to Dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  ECF 23.  For the reasons set forth below, Defendant's motion to dismiss the complaint in its entirety is **GRANTED**.

## BACKGROUND

### A.  Department of Health Mandate: Covid-19 Vaccines for Healthcare Workers

On August 18, 2021, in response to the surge in Covid-19 cases, the Department of Health ("DOH") Commissioner[2] issued an "Order for Summary Action" (the "Order")[3] requiring certain healthcare facilities to "continuously require" all covered personnel to be "fully vaccinated against COVID-19." *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 274- 75 (2d Cir. 2021) [hereinafter *We the Patriots I*]; *see also* Am. Compl. at fn. 2; *id.*  ¶ ¶ 37, 39.  The rule allowed for two exemptions to its vaccination requirement—a medical exemption and a religious exemption.  The religious exemption provided as follows:

> Covered entities shall grant a religious exemption for COVID-19 vaccination for covered personnel if they hold a genuine and sincere religious belief contrary to the practice of immunization, subject to a reasonable accommodation by the employer.

---

[2] "Section 16 authorizes the Commissioner to issue an order—effective for a maximum of 15 days—in response to a condition that in his opinion constitutes a 'danger to the health of the people.' N.Y. Pub. Health Law § 16." *Does 1-2 v. Hochul*, 632 F. Supp. 3d 120, 129 n.11 (E.D.N.Y. 2022).

[3] In August of 2021 the COVID-19 pandemic was "surging in New York, with daily positive cases up over 1000% over the course of six weeks." *Does 1-2 v. Hochul*, 632 F. Supp. 3d 120, 128 (E.D.N.Y. 2022) (internal citation omitted); *see also id.* at 127 n.1 (collecting cases noting that "the [c]ourt may take judicial notice of facts regarding COVID-19."). The DOH regulates "the sanitary aspects of . . . businesses and activities affecting public health," N.Y. Pub. Health Law ("PHL") § 201(1)(m).

2

Am. Compl. ¶ 39; Order for Summary Action at 6-7.  The Medical Exemption provided:

> If any licensed physician or certified nurse practitioner certifies that immunization with COVID-19 vaccine is detrimental to a specific member of a covered entity's personnel, based upon a specific pre-existing health condition, the requirements of this section relating to COVID-19 immunization shall be subject to a reasonable accommodation of such health condition only until such immunization is found no longer to be detrimental to the health of such member.  The nature and duration of the medical exemption must be stated in the personnel employment medical record and must be in accordance with generally accepted medical standards, (see, for example, the recommendations of the Advisory Committee on Immunization Practices of the U.S. Department of Health and Human Services).  Covered entities shall document medical exemptions and any reasonable accommodation in personnel records or other appropriate records in accordance with applicable privacy laws by September 27, 2021, and continuously, as needed, thereafter.

Order for Summary Action at 5-7.  *See* Am. Compl. ¶ 57.

On August 26, 2021, the DOH published Section 2.61[4], the emergency rule at issue in this case, superseding the Order for Summary Action.  *We the Patriots I*, 17 F.4th at 274-75; Am. Compl. at 2.  Section 2.61 directed hospitals, nursing homes, hospices, adult care facilities, and other identified healthcare entities to "continuously require" certain employees to be fully vaccinated against COVID-19 beginning on September 27, 2021, for "general hospitals" and nursing homes, and on October 7, 2021, for all other "covered entities" as defined in the Rule.  *See We the Patriots I*, 17 F.4th at 274-75.

Section 2.61 applied only to employees covered by the Rule's definition of "personnel," which includes employees, staff members, and volunteers "who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease."  Section 2.61(a)(2); *We the Patriots I*, 17 F.4th at 274.  Section 2.61 eliminated the religious exemption that was provided in the Order of Summary Action.  Section 2.61(a)(2); *We the Patriots I*, 17 F.4th at 274; *see also* Am. Compl. at 2.

---

[4] N.Y. Comp. Codes R. & Regs.  ("N.Y.C.C.R.R.") Tit. 10, § 2.61 (2021)10 N.Y.C.R.R. § 2.61(c) (Aug. 26, 2021) ("Section 2.61").

**B. Plaintiffs' Employment and Covid-19 Procedures**

Plaintiffs were healthcare workers[5] who worked at various sites and facilities within Northwell until their termination.  *See* Am. Compl. at 4-13.  Before the COVID-19 vaccine was available, Northwell imposed a set of mitigation protocols that employees were instructed to follow, including "wearing masks, socially distancing," and on August 2, 2021 Northwell began requiring its employees to test for Covid-19 on a weekly basis.  Am. Compl. ¶¶ 36, 63.

On August 18, 2021, Northwell implemented a new Covid-19 vaccination policy (the "Policy") announcing that all employees, including Plaintiffs, were required to be fully vaccinated against COVID-19 to remain employed by Northwell.  That Policy was implemented in response to the vaccine mandate ("DOH Mandate") that was imposed on August 16, 2021.  Am. Compl. ¶¶ 37-41 ("[O]n August 16, 2021, former Governor Andrew Cuomo announced that all New York state healthcare workers would be required to be vaccinated against COVID-19 if they wished to continue working at a healthcare facility in the state.").  The Policy stated that the submission of negative test results each week could no longer replace the vaccination requirement.  Am. Compl. ¶ 41.

Northwell created a "Religious Exemption Request Form" and instructed employees who sought religious exemptions to submit the completed form by September 3, 2021.  Am. Compl. ¶ 43.  "NHS did concede exemption request forms submitted after September 3, 2021, would be reviewed, 'but in order to comply with the State's regulatory requirement, team members submitting forms after September 3 may be placed on unpaid administrative leave as of September

---

[5] Plaintiffs' declarations include their positions, including, but not limited to: Nurses, Practice Supervisor of Operation, Senior Surgery Physician Assistant, CT Supervisor, Medical Assistant Physical Therapist, Administrative/Clerical Associate, Admitting Clerk, Ambulatory Care Clerk, Sign Language Interpreter, Speech Language Pathologist, Social Worker, Radiologic & Cardiovascular Technologist, Medical Records Analyst and Surgical Technologist.  *See* Am. Compl. ¶ 32; *see generally* Plaintiffs' Declarations ("Pls. Decl.'s"), ECF 19-1, Ex. 1-25.  For ease of reference, the Court will generally refer to them as healthcare workers.

27th if they are unvaccinated and their request is still being reviewed on that date.'"  Am. Compl.
¶ 49.

      Each of the Plaintiffs submitted a religious accommodation request to Northwell stating
they sincerely held religious beliefs that prevented them from complying with the Policy.[6]  Am.
Compl. at 3; *see also* Pls. Decl.'s Ex. 1-25.  ("My sincerely held religious beliefs extend beyond
the mere performance of abortions or receipt of an abortion; I sincerely believe that if I were to
knowingly inject, ingest, or receive a product that I knew was created through the use of fetal cell
line tissue, such action would impact my ability to ultimately go to Heaven.  Because of this, I
cannot comply with NHS' mandatory COVID-19 vaccination policy.").  In response, Northwell
did not contest the validity of Plaintiffs' asserted religious beliefs, but ultimately denied Plaintiffs'
"accommodation" request.[7]  *See* Am. Compl. at 21-22.  Subsequently, throughout September and
October of 2021, Northwell terminated individual Plaintiffs for failure to comply with the Policy—
reasoning that violating the Policy would violate the DOH Mandate.  *See* Am. Compl. ¶¶ 55, 57
("Instead, NHS relied upon Title 10 N.Y. Comp. Codes R. & Regs. § 2.61 ("Section 2.61")); *id.*
¶¶ 62, 86; *see generally* Pls. Decl.'s ¶ 12.  Consequently, Plaintiffs allege that Northwell "refused
to reasonably accommodate Plaintiffs sincerely held religious beliefs."[8]  Am. Compl. at 3.

---

[6] Plaintiffs attempt to distinguish "'exemption' and a religious 'accommodation' are not analogous but rather, legally
distinct terms." Am. Compl. ¶ 52.
[7] No additional information was provided by Plaintiffs regarding NHS's denial—only that each Plaintiff filed a timely
Charge of Discrimination with the EEOC and receiving the right to sue letter, which ultimately allowed Plaintiffs to
bring this lawsuit.  *See Cohn v. KeySpan Corp*., 713 F. Supp. 2d 143, 155 (E.D.N.Y. 2010) (citing *Curto v. Edmundson*,
392 F.3d 502, 503 (2d Cir. 2004)) ("Exhaustion of administrative remedies and the timely filing of a complaint with
the [Equal Employment Opportunity Commission ("EEOC")] are preconditions to filing an ADA action in federal
court.").
[8] The amended complaint states that "NHS simply ignored Plaintiffs religious accommodation requests, reiterated
unsolicited and irrelevant information (i.e., telling Plaintiffs they were not entitled to religious exemptions), and
terminated their employment without due process of law."  Am. Compl. ¶ 62.  However, the Court notes an
inconsistency in that the amended complaint, with regard to plaintiffs Cynthia Braccia, Jennifer Browne, Andera
DePalma, Dennise Johnson, and Marisol Ventrice stating that "Northwell discriminated against her and denied her
accommodation request."  *Id.* at 5.  Further the 25 declarations submitted on behalf of the Plaintiffs' also *all* state
"[t]here was no lawful basis for NHS to deny my request and refuse to accommodate me."  *See generally* Pls. Decl.'s.
Thus, Plaintiffs also appear to assert that NHS did in fact respond to their accommodation.

### C.  Plaintiff Rose Taylor's Employment and Termination

Plaintiff Rose Taylor ("Taylor") worked as a Surgical Technologist at NHS' South Shore University Hospital.  Am. Compl. ¶ 113, Taylor Declaration ("Taylor Decl."), Ex. 23, ¶ 3.  Taylor submitted a request for a "reasonable accommodation" to Northwell due to her "sincerely held religious beliefs" which she alleges Northwell "knew of."  *Id.* ¶ 12.  However, Taylor's declaration only briefly mentions her claim of disability, and does not state whether she properly filed a claim before the EEOC specifically regarding her ADA claim.  *See* Taylor Decl. ¶ 16-17 (Taylor asserts that "to also protect my interest in maintaining employment free from discrimination on the basis of religion, [she] timely filed a Charge of Discrimination ("Charge") with the EEOC pursuant to 42 U.S.C. §§ 2000e–5(e)(1), (f)(1) . . . .  [and that her] Charge alleged NHS discriminated and retaliated against me because of my religion and my sincerely held religious beliefs.").

Further, Taylor alleges that she is a disabled person within the meaning of 42 U.S.C. § 12102(1).  Am. Compl. ¶ 110.  Taylor alleges that she "suffers from a neurological disorder, which is a physical or mental impairment that substantially limits one or more of [her] major life activities, such as working, caring for herself, performing manual tasks, eating, sleeping, breathing, learning, reading, concentrating, thinking, communicating, and working.  NHS also regard [her] as having such an impairment as defined by 42 U.S.C. §§ 12102(1)(C), 3(A)."  Am. Compl. ¶ 111. Taylor further asserts that she is a qualified individual within the meaning of 42 U.S.C. § 12111(8), and that "NHS had actual knowledge or constructive knowledge of [her] disability at all times relevant to this action, in that NHS previously accommodated [her] disability; discussed [her] disability; discussed [her] need for accommodations; examined, reviewed, or possessed medical evidence of [her] disability; and received [her] numerous requests for a disability accommodation." *Id.* ¶¶ 112-16.  In addition, Taylor asserts that "NHS purposefully, willfully, intentionally, or

recklessly retaliated against [her] by engaging in a series of adverse actions, including: . . . Ignoring, denying, or refusing [her] requests for an accommodation; Threatening [her]; Condoning, encouraging, or incentivizing executives and administrative staff to discriminate against [her]; Manufacturing a false pretext in an attempt to terminate [her]; Terminating [her] employment; and NHS committed the aforesaid acts or omissions with the intent to humiliate, ridicule, and insult [her]." *Id*. ¶¶ 117-23.

### D.  Procedural History

On October 24, 2023, Defendants filed their Motion to Dismiss.  Defendant's Memorandum in Support of Motion to Dismiss ("Def. Memo"), ECF 23.  Plaintiffs filed their opposition to Defendant's motion to dismiss on November 27, 2023, ("Pl. Opp."), ECF 24, and Defendants filed a reply on December 11, 2023, ("Def. Reply"), ECF 25.

### LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court "must construe [the complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs favor." *Sacerdote v. N.Y. Univ*., 9 F.4th 95, 106-07 (2d Cir. 2021) (citing *Palin v. N.Y. Times Co*., 940 F.3d 804, 809 (2d Cir. 2019)); *see also Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020).  Therefore, to withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct.  *Id*.  While the Court "must accept as true all of the allegations contained in a complaint," this "tenet . . . is inapplicable to legal conclusions." *Id.*

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In considering this motion, the Court "must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999).[9]

## DISCUSSION

### A. Plaintiffs Fail to Plausibly Allege Title VII Claims[10]

Title VII prohibits an employer from discriminating "against any individual . . . because of such individual's . . . religion [or] sex." 42 U.S.C. § 2000e-2(a)(1). For a Title VII discrimination claim to survive a motion to dismiss, a plaintiff must plausibly allege "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (citation omitted); *see also Sumar v. Brooklyn Hosp. Ctr.*, 22-CV-7390 (RPK) (MMH), 2023 WL 8622654, at *2 (E.D.N.Y. Dec. 13, 2023).

The Second Circuit has held that at the pleading stage of an employment discrimination

---

[9] The adjudication of a Rule 12(b)(6) motion normally requires the district court "to look only to the allegations on the face of the complaint," but "may consider documents that 'are attached to the complaint,' 'incorporated in it by reference,' 'integral' to the complaint, or the proper subject of judicial notice." *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)). The Court also considers documents incorporated by reference in the Amended complaint and takes judicial notice of relevant state laws, state regulations, state case law, and public documents that are not subject to dispute. *See* Fed. R. Evid. 201(b) (permitting judicial notice of facts "not subject to reasonable dispute"); *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (stating that "relevant matters of public record" are susceptible to judicial notice).

[10] The Court notes that Defendant's motion papers do not argue that Plaintiffs failed to meet their administrative remedies or requirements with the Opportunity Employment Commission ("EEOC") pursuant to 42 U.S.C. §§ 2000e–5(e)(1), (f)(1). *See Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006); 42 U.S.C. § 2000e-5(e)(1). Further, the amended complaint and Declarations that follow assert that all Plaintiffs timely filed Complaints with the EEOC. *See* Am. Compl. at 4-13; *see generally* Pl.'s Decl.'s; *see also AMTRAK v. Morgan*, 536 U.S. 101, 109, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). Therefore, for the purposes of this Motion, the Court will not further address administrative remedies as it relates specifically to the religious discrimination EEOC charge as it appears the parties concede that is not at issue here. *See generally* Am. Compl. and Pl.'s Decl.'s (stating that "[] timely filed a charge of discrimination with the EEOC concerning claims arising under Title VII . . ., the EEOC issued [] her right-to-sue letter, providing that [] had 90 days to commence a civil action in federal court. Because [] filed this action within 90 days of receiving her right-to-sue letter, all conditions precedent to maintaining this action have been satisfied.").

case, a plaintiff has a "minimal burden" of alleging facts "suggesting an inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). Therefore, the facts alleged in the complaint must provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Vega*, 801 F.3d at 85. An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in degrading terms relating to their religion, or its invidious comments about others in the employee's protected group. *See id.* at 85-87.

1. **Plaintiffs Do Not Allege Circumstances Giving Rise to An Inference of Discrimination**

The *McDonnell Douglas* burden-shifting framework governs the Plaintiffs' claim of religious discrimination based on disparate treatment. *Adams v. N.Y. State Unified Ct. Sys.*, 22-CV-9739 (JMF), 2023 WL 5003593, at *3 (S.D.N.Y. Aug. 4, 2023) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, (1973)). Therefore, to survive a motion to dismiss on a disparate treatment claim under Title VII, a plaintiff must plausibly allege that "the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent."[11] *Santiago v. ACACIA Network, Inc.*, 634 F. Supp. 3d 143, 152 (S.D.N.Y. 2022) (citing *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015))." *Riggs v. Akamai Techs.*, 23-CV-06463 (LTS), 2024 WL 3347032, at *6 (S.D.N.Y. July 8, 2024). "At the motion to dismiss

---

[11] While Plaintiffs assert that they were "qualified" for their positions, the Second Circuit has held that vaccination is a proper "condition of employment in the healthcare field." *We The Patriots*, 17 F.4th at 294; *see also Kane v. De Blasio*, 623 F. Supp. 3d 339, 363 (S.D.N.Y. 2022) (collecting cases). The complaint alleges that "NHS announced its employees would no longer have the option to submit negative test results each week and all employees were required to become fully vaccinated against COVID-19 in order to remain employed by NHS . . . . In order to comply with the State's regulatory requirement, team members submitting forms after September 3 may be placed on unpaid administrative leave as of September 27th if they are unvaccinated and their request is still being reviewed on that date." Am. Compl. ¶ 41 n 4. Ultimately, Plaintiffs did not receive a vaccine or an exemption. *See generally* Am. Compl.; *see generally* Pls. Decl.'s. Accordingly, the amended complaint fails to allege that Plaintiffs were qualified for their position. *See Vega*, 801 F.3d at 83.

phase of litigation, the plaintiff 'need only give plausible support to a minimal inference of discriminatory motivation; she need not plausibly allege that the adverse employment action was attributable to discrimination.'" *Tandian v. State Univ. of N.Y.*, 698 F. Supp. 3d 425, 438 (N.D.N.Y. 2023) (citation omitted).

Here, Plaintiffs fail to adequately plead a religious discrimination claim because they fail to plead an inference of discrimination. *Vega*, 801 F.3d at 85. Put another way, Plaintiffs did not plead facts that indicate that Northwell discriminated against them because of their religion. The Complaint alleges that Northwell "refused to provide Plaintiffs with a reasonable religious accommodation on the basis that doing so would impose upon [Northwell] an undue hardship." Am. Compl. ¶ 55. The Court is left to parse Plaintiffs' amended complaint—that only offers conclusory allegations asserting that "NHS committed the above-mentioned discriminatory actions with the intent to humiliate, ridicule, and such discriminatory and retaliatory misconduct occurred because Plaintiffs requested an accommodation for their sincerely held religious beliefs and otherwise engaged in protected activity[,]" yet failing to actually identify any facts to substantiate these empty assertions. Am. Compl. ¶ 106. Such conclusory statements do not sufficiently show that Northwell's purportedly discriminatory intent but only that a refusal was predicated on an undue burden. In fact, the amended complaint itself acknowledges that Northwell "did not contest the validity of [Plaintiffs'] religious beliefs." *See* Am. Compl. ¶¶ 55, 57. ("NHS relied upon Title 10 N.Y. Comp. Codes R. & Regs. § 2.61 ("Section 2.61") – the brand new and ever so convenient regulation that eliminated an employee's ability to request a religious exemption while continuing to allow medical exemptions.").

Significantly, the 25 individual declarations and the personal statements made by some Plaintiffs in the amended complaint are devoid of any factual averments that any plaintiff

experienced religious discrimination by Northwell.  There is no factual evidence proffered that Northwell engaged in degrading conduct based upon Plaintiffs' religion.  Equally, there are no allegations of invidious comments made by Northwell about other religious employees.  *See Vega*, 801 F.3d at 85.  Further, Plaintiffs do not identify any similarly situated employees who were treated differently in a way that suggests that the timing of the Defendant's denial of their request was discriminatory.  *Salas v. New York City Dep't of Investigation*, 298 F. Supp. 3d 676, 688 (S.D.N.Y. 2018)(" To show that preferential treatment gives rise to an inference of discrimination, a plaintiff normally must allege that the relevant comparators were not members of the relevant "protected group" and were treated less harshly despite being "similarly situated" to the plaintiff."); *see Bandalos v. Stony Brook Univ. Med. Ctr*., 23-CV-0135 (AMD) (JMW), 2024 WL 1308708, at *4 (E.D.N.Y. Mar. 26, 2024).  Plaintiffs failed to allege any facts to suggest even an inference of discrimination, and therefore have failed to state the fourth element of their Title VII claims.  The Court finds that this is fatal to Plaintiffs' claims.

## 2. Plaintiffs Have Failed to Plausibly Allege Religious Discrimination for Failure to Accommodate

Title VII directs an employer to "reasonably accommodate" an employee's "religious observance or practice," unless such accommodations would impose "undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e-2(a)(1).  In a case involving alleged religious discrimination, a plaintiff may satisfy this burden by plausibly alleging that he or she "actually requires an accommodation of [his or her] religious practice" and that "the employer's desire to avoid the prospective accommodation [was] a motivating factor in [an employment] decision." *See E.E.O.C. v. Abercrombie & Fitch Stores, Inc*., 575 U.S. 768, 774-775 (2015).  An employer does not violate Title VII, however, if it can show that the prospective accommodation "would cause the employer to suffer an undue hardship." *Cosme v. Henderson*, 287 F.3d 152, 158

(2d Cir. 2002).

Plaintiffs' attempt to distinguish between "accommodation" and "exemption" is unavailing. Plaintiffs sought a vaccine "accommodation" that would allow Plaintiffs to continue to work their DOH "personnel"[12] jobs unvaccinated. *See* Am. Compl. ¶¶ 56-60. As an initial matter, Plaintiffs do not dispute that they are covered "personnel" as defined by Section 2.61(a)(2). Yet, Plaintiffs argue that they should have been able to continue in their respective roles without receiving the Covid-19 vaccine. While the Court acknowledges that there may be some relief for accommodation under Section 2.61 "for an employer to accommodate—not exempt—employees with religious objections, by employing them in a manner that removes them from [Section 2.61's] definition of 'personnel,'" Plaintiffs' amended complaint and declaration are devoid of any assertion that they requested any accommodation that would have removed them from this definition. *See We the Patriots USA, Inc. v. Hochul*, 17 F.4th 368, 370 (2d Cir. 2021) [hereinafter "*We the Patriots II*"].

Here, Plaintiffs assert that the religious "accommodation" sought was to continue to participate in the mitigation protocols, *i.e.,* wearing face masks and receiving weekly Covid-19 tests. *See* Am. Compl. ¶¶ 63, 96. However, Plaintiffs "accommodation" request has clearly been foreclosed by the Second Circuit holding that "Title VII does not require covered entities to provide the accommodation that Plaintiffs prefer—in this case, a *blanket religious exemption* allowing them to continue working at their current positions unvaccinated." *We the Patriots II*, 17 F.4th at 370(emphasis added); *see also* 10 N.Y.C.R.R. § 2.61(a)(2), (c). Thus, Plaintiffs have not

---

[12] Section 2.61 defines "personnel" as any employees or affiliates of a covered entity "who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease." Section 2.61(a)(2); *see also* 10 N.Y.C.R.R. § 2.61. 2023 (New York State Department of Health's State Mandate, issued on August 26, 2021, mandating that all "personnel" employed in "covered entities," such as hospitals, be vaccinated by September 27, 2021).

plausibly alleged religious discrimination for failure to accommodate.

### 3. Northwell Would Face Undue Hardship in Granting Plaintiffs Accommodation

Title VII makes it unlawful for employers "to discharge . . . or otherwise to discriminate against any individual" in his or her employment "because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1).  The statute defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate . . . an employee's . . . religious observance or practice without undue hardship on . . . the employer's business." *Id*. § 2000e(j)."  *We the Patriots I*, 17 F.4th at 291 (internal citations omitted).  "An accommodation is said to cause an undue hardship whenever it results in 'more than a de minimis cost' to the  employer." *Baker v. The Home Depot*, 445 F.3d 541, 548 (2d Cir. 2006) (citation omitted).  Undue hardship is "shown when a burden [on an employer] is substantial in the overall context of an employer's business."  *Groff v. DeJoy*, 600 U.S. 447, 468 (2023); *accord D'Cunha v. Northwell Health Sys.*,  23-CV-476, 2023 WL 7986441, at *2 (2d Cir. Nov. 17, 2023).

"Courts in this circuit have dismissed … Title VII claims brought against healthcare employers with COVID-19 vaccination mandates, on the basis that allowing plaintiffs the religious exemptions they sought would have created an undue hardship on the employer by forcing them to violate Section 2.61." *Haczynska v. Mount Sinai Health Sys.*, 23-CV-3091 (MKB), 2024 WL 3178639, at *13 (E.D.N.Y. June 26, 2024) (*citing Cagle v*, 680 F. Supp. 3d 428 at 436 (collecting "[a] long line of cases in the Southern and Eastern Districts of New York" that "have uniformly rejected claims that an employer is required by Title VII to accommodate a request for a religious exemption from [Section 2.61] at the cost of violating Section 2.61 and thus New York law."); *Accord Bey v. City of New York*, 999 F.3d 157, 170 (2d Cir. 2021) ("Title VII cannot be

13

used to require employers to depart from binding federal regulations."); *see also Adamowicz v. Northwell Health Inc*., 23-CV-01277 (OEM) (LGD), 2024 WL 072210, at *7-8 (E.D.N.Y. Mar. 11, 2024); 10 N.Y.C.R.R. § 2.61.

Therefore, even assuming *arguendo* that Plaintiffs could plead religious discrimination based upon the failure to accommodate or disparate treatment, the blanket accommodation Plaintiffs were seeking would have imposed on Northwell an impermissible undue hardship. Northwell relies on *Groff* to argue that the religious exemption requested by Plaintiffs would have created an undue hardship for Northwell by forcing Northwell to violate New York state law. Def. Memo at 2. However, Plaintiffs contend that *Groff* requires *Northwell* to bear the burden of proving that Plaintiffs' accommodation requests would result in a substantial increase in cost— which Plaintiffs assert Defendants have failed to do. *See* Pl. Opp. at 12. Plaintiffs' interpretation of *Groff* is unavailing in that the outcome of this argument has already been foreclosed by the Second Circuit's decision in *D'Cunha*, a case brought against Northwell Health that was dismissed on nearly identical facts. 2023 WL 7986441, at *2-3 (2d Cir. Nov. 17, 2023).

The Court finds that the Defendant has sufficiently shown that granting Plaintiffs a religious exemption—that was styled as an "accommodation"—would have imposed an "undue hardship" as recognized under *Groff*. *See Groff*, 600 U.S. at 469. At the time in which Defendant had denied Plaintiffs request for religious exemptions to the DOH Mandate, the state law was clear in that "[c]overed entities" — which incontrovertibly included Northwell — "continuously require personnel to be fully vaccinated against COVID-19." Section 2.61(c). The mandate did not allow for religious exemptions. *See* Section 2.61(d). Consequently, Northwell would have had to violate state law in order to grant Plaintiffs requested religious exemptions, "thereby suffering an undue hardship." *See D'Cunha*, 2023 WL 7986441, at *3 ("Defendant could not have granted

14

[plaintiff's] religious-exemption request without violating [Section 2.61], exposing itself to potential penalties, and thereby suffering an undue hardship.").[13]

Plaintiffs' allegations are insufficient to allege that Northwell could have accommodated their religious beliefs without imposing on Northwell an undue hardship.  The Court therefore grants Defendant's motion to dismiss Plaintiffs' Title VII claims.

### B.  Plaintiff Taylor Fails to Plausibly Allege Her ADA Claim[14]

To state a claim for discrimination under the ADA, a plaintiff must allege that "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability." *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 486 (S.D.N.Y. 2017) (quoting *Capobianco v. City of N.Y.*, 422 F.3d 47, 56 (2d Cir. 2005)).

---

[13] *See also* 10 N.Y.C.R.R. § 2.61 (New York State Department of Health's State Mandate, issued on August 26, 2021, mandating that all "personnel" employed in "covered entities," such as hospitals, be vaccinated by September 27, 2021.).

[14] As a threshold matter, although not raised by Defendant—it appears that Plaintiff Taylor failed to exhaust her administrative remedies as it relates to her ADA claim. *Cohn v. KeySpan Corp*., 713 F. Supp. 2d 143, 155 (E.D.N.Y. 2010) (citing *Curto v. Edmundson*, 392 F.3d 502, 503 (2d Cir. 2004)) ("Exhaustion of administrative remedies and the timely filing of a complaint with the [Equal Employment Opportunity Commission ("EEOC")] are preconditions to filing an ADA action in federal court."). Here plaintiff Taylor's exhaustion remedies are only with regard to her religious discrimination. Taylor Decl. at 4.  The amended complaint and plaintiff Taylor's declaration is devoid of any mention of a charge specifically brought before the EEOC with regard to her ADA claim, if and or when she brought it, if there was any determination on such charges, or even about when the EEOC mailed her right-to-sue letter or when she received it.  Claims not asserted before the EEOC may still be pursued in a subsequent federal action if they are "reasonably related to" those that were filed with the agency.  *Legnani v. Alitalia Linee Aeree Italiane, S.P.A*., 274 F.3d 683, 686 (2d Cir. 2001) (internal quotation marks omitted). "A claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Deravin v. Kerik*, 335 F.3d 195, 200-01 (2d Cir. 2003) (internal quotation marks omitted).  In this case, none of the acts of religious discrimination alleged in Plaintiff Taylors EEOC charge involved the same acts raised in connection with her ADA claim.  A claim of disability discrimination is conceptually distinct from a claim of religious discrimination, and based upon what Plaintiff Taylor has plead as to her EEOC charge related to the religious discrimination would not have given agency reason to investigate a disability claim.  *See Rosado v. Port Auth. of N.Y. & N.J.*, 22-587, 2024 WL 658776, at *2 (2d Cir. Feb. 16, 2024); *see also Tsai v. Rockefeller Univ*., 137 F. Supp. 2d 276, 284 (S.D.N.Y. 2001) (collecting cases) (courts in this Circuit have typically found that "Title VII claims are not reasonably related to ADA claims.").

Defendant argues that even assuming plaintiff Taylor meets the first element—coverage under the ADA—she has failed to plead sufficient facts for the remaining elements of a *prima facie* ADA claim. Def. Memo at 15. Plaintiff Taylor's argument in her opposition is nothing more than recitation of the conclusory facts already set forth in the amended complaint. *See* Pl's Opp. at 16-17. Plaintiff Taylor's opposition papers do not address the deficiencies raised in Defendant's Motion, but rather restate her position that she properly pled sufficiently to support her ADA claim. *Id.*

## 1.  Plaintiff Fails to Plead That She Has a Disability Under The ADA

Under the ADA, a "disability" is: "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1).

"Major life activities" include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." § 12102(2)(A); *see Niles v. New York City Hum. Res. Admin.*, 22-CV-6307 (AMD) (JAM), 2024 WL 496346, at *5 (E.D.N.Y. Feb. 8, 2024). "In determining whether a major life activity is substantially limited by a physical or mental impairment, courts consider (1) the nature and severity of the impairment, (2) its duration or expected duration; and (3) the existence of any actual or expected permanent or long-term impact." *Metzler v. Kenmore-Town of Tonawanda Union Free School District*, 22-CV-9595, 2024 WL 3621480, at *4 (W.D.N.Y. 2024) (citations omitted).

Therefore, a plaintiff must state sufficient facts as to the nature of the disability and purported limitations, as well as details regarding the 'frequency, duration, or severity of his or her limitations." *Earl v. Good Samaritan Hospital of Suffern NY*, 625 F.Supp. 292, 304 (S.D.N.Y

2022) (citation omitted).  To survive a motion to dismiss, "a plaintiff [must] do more than simply allude to her impairments in her pleadings; she must plead how those impairments significantly impacted major life activities."  *Bailey-Lynch v. Dollar Tree Stores, Inc.*, 20-CV-01610 (JLS) (MJR), 2022 WL 20741772, at *8 (W.D.N.Y. Oct. 27, 2022), report and recommendation adopted by 2023 WL 6057427 (W.D.N.Y. Sept. 18, 2023) (alteration in original; quotation and citation omitted).  Taylor fails to do so here.

First, Taylor alleges she suffers from a "neurological disorder" which is a "physical or mental impairment" that substantially limits one or more of her "major life activities, such as working, caring for herself, performing manual tasks, eating, sleeping, breathing, learning, reading, concentrating, thinking, communicating, and working."  Am. Compl. ¶ 111; Pl. Opp., at 16.  Taylor, however, provides no detailed factual information regarding the nature and severity of this "neurological condition," nor its duration or effects.  While Taylor alleges this condition affects one or more aspects of her life, she fails to plead any facts regarding which specific major life activity is affected by her alleged condition, nor does she provide any details as to how her life activities are affected.  Pl. Opp., at 16-17.  Courts routinely grant motions to dismiss on disability claims where the plaintiff does not plead sufficient facts to allege they are disabled under the meaning of the ADA.  *See also Dechberry v. N.Y.C. Fire Dep't*, 124 F. Supp. 3d 131, 151 (E.D.N.Y. 2015) ("Without any factual specificity as to the alleged disability claimed and the major life activities affected, the Complaint fails to plead that plaintiff was disabled."); *Reid v. Time Warner Cable*, 14-CV-3241 (DLI) (RML), 2016 WL 743394, (E.D.N.Y. Feb. 22, 2016) (granting a Motion to Dismiss where the Plaintiff identified his disability only as "aveloplasty," but failed to provide any "details concerning the frequency with which these symptoms manifested, or the duration he suffered from them."); *Mercer v. Viacombs/Paramount*, 22-CV-

17

6322 (LGS), 2024 WL 3553133, at *5 (S.D.N.Y. July 26, 2024) (finding plaintiff failed to state a claim where plaintiff claimed a medical allergy/contraindication to all Covid-19 vaccinations as a disability but failed to provide any supporting documentation with details regarding the allergy or how this substantially limits a major life activity).

Therefore, the Court finds that plaintiff Taylor has failed to plead facts that properly allege that she has physical or mental impairment that substantially limits one or more major life activities pursuant to 42 U.S.C. § 12102(1)(a).  *See Metzler*, 2024 WL 3621480, at *5 (dismissing plaintiff's claim for disability discrimination for failure to state a claim finding plaintiff's assertion that she "has a disability under the ADA," is "a factually unsupported legal conclusion not entitled to the presumption of truthfulness," and a list of various diagnosis "allege[d] no facts whatsoever concerning how her medical conditions substantially limit her major life activities.  She thus fails to state a claim.").

Second, Taylor asserts that because Defendant had previously accommodated her for her disability, as defined in 42 U.S.C. §§ 12102(1)(C), 3(A), and possessed medical evidence of her alleged disability she has met prongs B & C.  Further, she alleges Northwell had "actual or constructive knowledge" of her disability.  Am. Comp. ¶¶ 111, 116.  However, the Amended Complaint and Taylor's declaration are barren of any allegations or details as to when Defendant was informed of her disability or what accommodations she previously received in the workplace. Plaintiff Taylor did not plead sufficient facts to support a finding that she is disabled within the meaning of the ADA.

### 2.  Plaintiff Was Not Qualified to Perform the Essential Functions of The Job

"The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such

18

individual holds or desires."  42 U.S.C. § 12111(8).  Plaintiff alleges she is a qualified individual within the meaning of 42 U.S.C. § 12111(8) because she can perform "the essential functions of a Surgical Technologist based factors including but not limited to, her education, experience, and performance reviews."  Am. Compl. ¶¶ 112-13.

Defendant argues plaintiff Taylor was not qualified for the position at the time of her termination because she was not in compliance with the employment requirements with regard to Northwell's Policy arising out of the DOH Mandate.  Def.'s Mot., at 20.  As discussed *infra*, pursuant to the DOH mandate and Taylor's role as Surgical Technologist, she is clearly considered "personnel" under 10 N.Y.C.R.R. § 2.61.  Thus, Covid-19 vaccination was a qualification of employment and Taylor's choice[15] to not get vaccinated (without a medical exemption) makes her *per se* unqualified for her position.[16]  *Id.; see also We The Patriots II*, 17 F.4th at 370 ("[I]f a medically eligible employee's work assignments mean that she qualifies as 'personnel,' she is covered by the Rule and her employer must 'continuously require' that she is vaccinated against COVID-19"); 10 N.Y.R.R. § 2.61(a)(2), (c); *Broecker v. New York City Dep't of Educ.*, 585 F. Supp. 3d 299, 316-17 (E.D.N.Y. 2022); *see also We The Patriots I*, 17 F.4th at 294 ("Vaccination is a condition of employment in the healthcare field.").

---

[15] As Defendant's correctly note, Plaintiffs' argument that they did not have "the power of choice" (see Opp., at 10-11) has already been foreclosed by the Second Circuit.  *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 293-94 (2d Cir. 2021)("Although individuals who object to receiving the vaccines on religious grounds have a hard choice to make, they do have a choice.").

[16] Defendant brings forth an additional argument that Plaintiff Taylor failed to satisfy the statutory requirements as it relates to medical exemption pursuant to Section 2.61 by failing to provide documentation from a physician that identified a "pre-existing medical condition" and failing to assert the medical risk she would face if she received the COVID-19 vaccination.  Def. Memo. at 16.  Plaintiff Taylor does not address any of the arguments made by Defendants as it relates to the statutory requirements.  Plaintiffs' general assertion is that the DOH Mandate was not enforceable.  However, the Court notes that this issue has been foreclosed countless times in this Circuit.  *See Montgomery v. New York Presbyterian Hospital*, 23-CV-9201 (PAE) (OTW), 2024 WL 4068786, at *1 (S.D.N.Y. Aug. 13, 2024); *accord Wilson v. New York Soc'y for the Relief of the Ruptured & Crippled, Maintaining the Hospital for Special Surgery*, 22-CV-9207 (AT) (JLC), 2023 WL 5766030 at *5 (S.D.N.Y. Sept. 7, 2023).

### 3.   Plaintiff Taylor Did Not Suffer Adverse Employment Action Because Of Her Disability

"To establish a claim of disability discrimination under the ADA, the adverse employment action must be *causally linked* to the alleged act of discrimination on the basis of disability." *Holmes v. New York City Dept. of City-Wide Admin. Servs.*, 14-CV-8289 (KBF), 2015 WL 1958941, at \*14 (S.D.N.Y. Apr. 30, 2015) (*citing Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 107 (2d Cir. 2001) (a "causal connection between a disability and an adverse employment action" is "requisite" for establishing liability for discrimination claim under the ADA). "A plaintiff's failure to establish a nexus between her qualifying disability and her request for an accommodation is fatal to a claim for failure to accommodate." *Mirinaviciene v. Keuka Coll.*, 23-CV-6233 (FPG), 2023 WL 8281897, at \*3 (W.D.N.Y. Nov. 30, 2023) (citation omitted).

As with her Title VII claim, Taylor fails to allege any facts to plausibly suggest that any employment actions—adverse or otherwise—were based on her alleged disability.  *See Heckman v. Town of Hempstead,* 568 F. App'x 41, 45 (2d Cir. 2014) (affirming dismissal where plaintiff's allegations did not suggest a plausible inference that any of the defendants intentionally discriminated against him on the basis of his disability).  Plaintiff Taylor asserts in the amended complaint that:

> NHS purposefully, willfully, intentionally, or recklessly retaliated against Plaintiff by engaging in a series of adverse actions, including: 'Ignoring, denying, or refusing Ms. Taylor's requests for an accommodation; Threatening Ms. Taylor; Condoning, encouraging, or incentivizing executives and administrative staff to discriminate against Ms. Taylor; Manufacturing a false pretext in an attempt to terminate Ms. Taylor; and Terminating Ms. Taylor's employment.'  NHS committed the aforesaid acts or omissions with the intent to humiliate, ridicule, and insult Ms. Taylor.

*See* Am. Compl. ¶¶ 117-123.

However, these conclusory allegations fail to elucidate specific instances of Defendant's conduct, nor do they assert inferences of discrimination that were purportedly done by Northwell

Case 2:22-cv-06687-OEM-LGD   Document 30   Filed 09/24/24   Page 21 of 21 PageID #: 325

because of her disability.  Further, plaintiff Taylor has failed to plead sufficient facts to assert she has a disability within the meaning of 42 U.S.C. § 12102(1), and thus, she fails to state a claim that her termination of employment was because of her disability.  *See* Am. Compl. ¶¶ 55, 57 (where Taylor asserts that Northwell terminated her because providing the religious accommodation of remaining in her "personnel" unvaccinated would impose the undue burden of violation New York state law).

Accordingly, plaintiff Taylor has not pled sufficient facts to establish a claim for discrimination under the ADA and thus her claim must be dismissed for failure to state a claim.[17]

## CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss is **GRANTED**, and the Amended Complaint is dismissed in its entirety.

**SO ORDERED.**

/s/

ORELIA E. MERCHANT

United States District Judge

Dated: September 24, 2024
       Brooklyn, New York

---

[17] "Claims alleging discrimination under the ADA are subject to the burden-shifting analysis established in *McDonnell*." *Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (cleaned up).  Under this framework, "once a plaintiff produces minimal evidentiary support for the claim of discriminatory motivation, the burden of production shifts to the employer to articulate a non-discriminatory reason for the adverse employment action." *Id*.  Whether a proposed accommodation is reasonable, however, is a separate question, where the plaintiff only has the burden of production to show the existence of a plausible accommodation.  *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995).  Once a plaintiff has done this, the defendant's burden merges with showing the proposed accommodation is unreasonable, with its burden of showing "as an affirmative defense, that the proposed accommodation would cause it to suffer an undue hardship." *Id*.  Here, the Court finds that the undue burden analysis for Plaintiff Taylor's ADA accommodation is identical to the above discussion regarding undue hardship, *infra* Discussion, A(3).